**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| DISTRIBUTED MEDIA SOLUTIONS, LLC, | |
| Plaintiff, | CIVIL ACTION NO. 2:22-cv-255 |
| v. | |
| ASPIRO AB, | **JURY TRIAL DEMANDED** |
| Defendant. | |

**PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Distributed Media Solutions, LLC ("DMS" or "Plaintiff") files this Complaint for patent infringement against Aspiro AB ("Aspiro" or "Defendant") and states as follows:

**NATURE OF THE ACTION**

1.      This is a civil action for patent infringement under the patent laws of the United States of America, 35 U.S.C. § 1 *et seq*.

2.      DMS is the owner of all right, title, and interest in U.S. Patent Nos. RE47,053 (the "'053 Patent"), 8,122,004 (the "'004 Patent"), and 8,046,672 (the "'672 Patent") (collectively, "the Asserted Patents"), which have been attached as Exhibits A, B, and C and incorporated herein by reference.

3.      Defendant Aspiro has infringed and continues to infringe one or more claims of the Asserted Patents by making, using, offering to sell, and selling within the United States, including in this District, certain products and services, including through its Tidal product and service.  DMS seeks to recover monetary damages, attorneys' fees, and costs.

**THE PARTIES**

4.      DMS is a Georgia limited liability company with a principal place of business at 4725 Peachtree Corners Circle, Suite 230, Peachtree Corners, GA 30092.

5.      On information and belief, Defendant Aspiro is a company organized under the laws of Sweden, with its principal place of business at Grabrodersgatan 2, Malmo, Kalmar, Sweden.  On information and belief, Defendant Aspiro offers its products and/or services, including those accused herein of infringement, to customers and potential customers located in Texas and in this District.

## JURISDICTION AND VENUE

6.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7.      This Court has personal jurisdiction over Aspiro in accordance with due process and/or the Texas Long Arm Statute because, among other things, Aspiro does business in this State.  For example, Aspiro has engaged, and continues to engage, in continuous, systematic, and substantial activities with this State, including the substantial marketing, use, and sale of products and services with this State and this District.  This Court has personal jurisdiction over Aspiro because it has committed acts giving rise to DMS's claims for patent infringement within and directed to this District and has derived substantial revenue from its goods and services provided to individuals in this State and this District.

8.      Defendant has committed and continues to commit acts of infringement in violation of 35 U.S.C. § 271 within the Eastern District of Texas.  Defendant has in the past made, used, marketed, distributed, offered for sale, sold, and/or imported infringing products, and performed infringing methods, in the State of Texas and in this District.  Defendant continues to make, use, market, distribute, offer for sale, sell, and/or import infringing products, and perform infringing

methods, in the State of Texas and in this District.  Accordingly, Defendant has in the past engaged, and continues to engage, in infringing conduct within and directed at or from this District. Additionally, Defendant has purposefully and voluntarily placed its infringing products into the stream of commerce with the expectation that its infringing products will be used in this District. The infringing products have been and continue to be distributed to and used in this District. Defendant's acts have caused, and continue to cause, injury to Plaintiff, including within this District.

9.     Venue is proper in this District under the provisions of 28 U.S.C. §§ 1391(b), (c), (d) and/or 1400(b) at least because Aspiro is a foreign corporation organized under the laws of Sweden.

### U.S. PATENT NO. RE47,053

10.     On September 18, 2018, the United States Patent and Trademark Office duly and legally issued the '053 Patent, entitled "Method and System for Subscriber-Based Audio Service Over a Communication Network" after a full and fair examination.

11.     Exhibit A is a true and correct copy of the '053 Patent.

12.     The '053 Patent is valid and enforceable under United States patent laws.

13.     Plaintiff is the owner of the '053 Patent, having received all right, title and interest in and to the '053 Patent from the previous assignee of record.

14.     Plaintiff possesses all rights of recovery under the '053 Patent, including the exclusive right to recover for past infringement.

## U.S. PATENT NO. 8,122,004

15.     On February 21, 2012, the United States Patent and Trademark Office duly and legally issued the '004 Patent, entitled "Generating and Providing Rich Media Presentations Optimized for a Device Over a Network" after a full and fair examination.

16.     Exhibit B is a true and correct copy of the '004 Patent.

17.     The '004 Patent is valid and enforceable under United States patent laws.

18.     Plaintiff is the owner of the '004 Patent, having received all right, title and interest in and to the '004 Patent from the previous assignee of record.

19.     Plaintiff possesses all rights of recovery under the '004 Patent, including the exclusive right to recover for past infringement.

## U.S. PATENT NO. 8,046,672

20.     On October 25, 2011, the United States Patent and Trademark Office duly and legally issued the '672 Patent, entitled "Method and System for Delivering Technology Agnostic Rich Media Content Within an Email, Banner Ad, and Web Page" after a full and fair examination.

21.     Exhibit C is a true and correct copy of the '672 Patent.

22.     The '672 Patent is valid and enforceable under United States patent laws.

23.     Plaintiff is the owner of the '672 Patent, having received all right, title and interest in and to the '004 Patent from the previous assignee of record.

24.     Plaintiff possesses all rights of recovery under the '672 Patent, including the exclusive right to recover for past infringement.

## THE ASSERTED PATENTS

25.     The claims of the Asserted Patents are directed to patent-eligible, non-abstract subject matter under 35 U.S.C. § 101.  They are not directed to abstract ideas, and the claimed

technology consists of ordered combinations of features and functions that, at the time of the invention, were not, alone or in combination, well-understood, routine, or conventional.

26.     The Asserted Patents provide technical and unconventional solutions to existing shortcomings of the prior art.  The specifications of the Asserted Patents disclose shortcomings in the prior art and further explain, in detail, the technical and unconventional way the claimed inventions resolve or overcome these shortcomings.

27.     For example, the '053 Patent explains that "an improved method for delivering music to users is desired that protects the rights of the owners of the music."  '053 Patent at 1:48-50.  As part of the solution to this problem, the '053 Patent discloses an invention where a subscriber-based service provides "audio files to a client device connected to a server through a network."  *Id*. at 2:56-59.

28.     The '004 and '672 Patents explain that one problem with existing systems was that the number of different systems and media files available resulted in users being "constantly bombarded with different requirements" to receive and play those files.  '004 Patent at 1:20-52.  This problem was solved, in part, through the use of an "attribute inquiry system" that determines certain configuration information prior to providing the requested content.  *Id.* at 13:28-63.

## ASPIRO'S INFRINGING PRODUCTS AND ACTIVITIES

29.     Aspiro provides Tidal, an on-demand audio-streaming platform ("the Accused Product") that enables its users to create and share playlists of audio content.  In addition, the Accused Product monitors and analyzes streaming audio data to determine royalties for content creators and providers.



[https://tidal.com/about](https://tidal.com/about) (last visited June 7, 2022).

← TIDAL / What is TIDAL? / Music/Content

**How Do I Create Playlists?**

To create a playlist on your desktop, in the left column under My Playlists, click Create New Playlist. Give the list a name, click Enter and then fill it with music. You may have unlimited playlists.

There are several ways to add tracks and albums to your playlists on your desktop. You can click on the cover image or track and drag the music to My Playlists to add to your general music collection, or you can click on the + and add to your playlist.

If you want to change the name of the list on your desktop, press the edit button located to the right of the playlist title. You can also add a description of your playlist to specify what it is.

To delete a playlist on your desktop, go to the Playlist bar on the left-hand slider under My Collection. You can right-click the playlist with your mouse and choose to delete or select the more options menu on an open playlist and select delete.

[https://support.tidal.com/hc/en-us/articles/201314721-How-Do-I-Create-Playlists-](https://support.tidal.com/hc/en-us/articles/201314721-How-Do-I-Create-Playlists-) (last visited June 7, 2022).

**Share Using the iOS App**

1. Tap on the 3 dots to the right of the track, album, playlist, etc.
2. Tap share.
3. Decide on how you want to share it.

- You can copy/paste the URL of the item into an email, text, etc.

- You can click on the Facebook button to share it via Facebook

- You can click on the Twitter button to share it via Twitter

https://support.tidal.com/hc/en-us/articles/115005840509-Share-Using-the-iOS-App (last visited

June 7, 2022).

**Direct Artist Payouts and Royalties**

**What is the Direct Artist Payouts program?**

We are introducing a direct-to-artist payment component: the Direct Artists
Payout program. This experimental program aims to give artists access to
another payment stream by allocating up to 10% of a HiFi Plus subscriber's fees
directly to that account's top streamed artist. This will allow artists to benefit
directly from the support of their fans on TIDAL.

https://support.tidal.com/hc/en-us/articles/4409637608849-Direct-Artist-Payouts-and-Royalties

(last visited June 7, 2022).

30.     In addition, the Accused Product is enabled to be implemented in a browser.  When

run on a browser, the Accused Product ascertains certain browser and/or system information to

make determinations regarding the content provided to the browser.

TIDAL can also be enjoyed without downloading an app through our web player
at listen.TIDAL.com.

https://support.tidal.com/hc/en-us/articles/115005868269-Download-TIDAL (last visited on June

7, 2022).

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. RE47,053

31.     Plaintiff incorporates by reference and re-alleges the foregoing paragraphs of this

Complaint as if fully set forth herein.

32.   Defendant has directly infringed at least claim 22 of the '053 Patent in violation of 35 U.S.C. § 271 *et seq.*, by making, using, offering for sale, or selling in the United States, and/or importing into the United States without authority or license the Accused Product.

33.   Defendant directly infringes at least claim 22 of the '053 Patent by performing all the limitations of that claim.  For example, claim 22 of the '053 Patent recites:

A method, comprising:

receiving, at a computer system, a request from a first user of a music streaming service to send a playlist of music files to a second user of the music streaming service, wherein the playlist was previously created by the first user;

in response to receiving the request from the first user, sending, by the computer system, a message identifying the playlist to the second user;

receiving, at the computer system, a request from the second user to begin streaming at least a portion of the playlist;

in response to receiving the request from the second user, streaming, by the computer system, one or more of the music files included in the playlist to the second user;

storing, by the computer system, play-out information indicative of an amount of the streaming of the music files in the playlist to the second user, wherein the storing includes inserting records into a table of streamed music files, wherein the records include a first record specifying, for a particular one of the music files in the playlist streamed to the second user, 1) a pointer to the particular music file, 2) a duration of play-out of the particular music file streamed to the second user, and 3) an owner identifier indicating an owner of the particular music file to receive payment; and

based on the play-out information, allocating, by the computer system, payments for owners of the music files in the playlist that have been streamed to the second user, wherein the allocating includes determining a total duration of play-out of the particular music file based on a plurality of durations of play-out of the particular music file included in the table.

34.   As in claim 22 of the '053 Patent, the Accused Product receives, at a computer system, a request from a first user of a music streaming service (*e.g.*, Tidal) to send a playlist of music files to a second user of the music streaming service, wherein the playlist was previously created by the first user.  For example, Tidal enables a first user to create a playlist.

8

**How Do I Create Playlists?**

To create a playlist on your desktop, in the left column under My Playlists, click Create New Playlist. Give the list a name, click Enter and then fill it with music. You may have unlimited playlists.

There are several ways to add tracks and albums to your playlists on your desktop. You can click on the cover image or track and drag the music to My Playlists to add to your general music collection, or you can click on the + and add to your playlist.

If you want to change the name of the list on your desktop, press the edit button located to the right of the playlist title. You can also add a description of your playlist to specify what it is.

https://support.tidal.com/hc/en-us/articles/201314721-How-Do-I-Create-Playlists-   (last   visited

June 13, 2022).

**Create playlists using the iOS app**

1. Tap on the 3 horizontal dots to the right of the track
2. Tap on Add to Playlist
3. Tap Create New Playlist
4. Tap add a playlist title
5. Tap Create Playlist

https://support.tidal.com/hc/en-us/articles/115005843025-Create-playlists-using-the-iOS-app

(last visited June 13, 2022).  And then that first use can share that playlist with another user.

**Share Using the iOS App**

1. Tap on the 3 dots to the right of the track, album, playlist, etc.
2. Tap share.
3. Decide on how you want to share it.

- You can copy/paste the URL of the item into an email, text, etc.

- You can click on the Facebook button to share it via Facebook

- You can click on the Twitter button to share it via Twitter

https://support.tidal.com/hc/en-us/articles/115005840509-Share-Using-the-iOS-App  (last  visited

June 13, 2022).

35.     As in claim 22 of the '053 Patent, in response to receiving the request from the first user, the Accused Product sends, by the computer system, a message identifying the playlist to the second user.  For example, the Accused Product can send a message identifying the playlist to a second user through various means.

**Share Using the iOS App**

1. Tap on the 3 dots to the right of the track, album, playlist, etc.
2. Tap share.
3. Decide on how you want to share it.

- You can copy/paste the URL of the item into an email, text, etc.

- You can click on the Facebook button to share it via Facebook

- You can click on the Twitter button to share it via Twitter

https://support.tidal.com/hc/en-us/articles/115005840509-Share-Using-the-iOS-App  (last  visited June 13, 2022).

36.     As in claim 22 of the '053 Patent, the Accused Product receives, at the computer system, a request from the second user to begin streaming at least a portion of the playlist.

**Playlists**

1. Locate the playlist you want and tap on it to access details of the playlist
2. Tap on the heart icon to favorite it

https://support.tidal.com/hc/en-us/articles/115005840649-Favorite-Tracks-Albums-Artists-Playlists-Using-the-iOS-app (last visited June 13, 2022).

37.     As in claim 22 of the '053 Patent, in response to receiving the request from the second user, the Accused Product streams, by the computer system, one or more of the music files included in the playlist to the second user.

**Playlists**

1. Locate the playlist you want and tap on it to access details of the playlist
2. Tap on the heart icon to favorite it

10

https://support.tidal.com/hc/en-us/articles/115005840649-Favorite-Tracks-Albums-Artists-Playlists-Using-the-iOS-app (last visited June 13, 2022).

38.     As in claim 22 of the '053 Patent, the Accused Product stores, by the computer system, play-out information indicative of an amount of the streaming of the music files in the playlist to the second user, wherein the storing includes inserting records into a table of streamed music files, wherein the records include a first record specifying, for a particular one of the music files in the playlist streamed to the second user, 1) a pointer to the particular music file, 2) a duration of play-out of the particular music file streamed to the second user, and 3) an owner identifier indicating an owner of the particular music file to receive payment.  For example, Aspiro pays artists based on plays of content.

## Direct Artist Payouts and Royalties

### What is the Direct Artist Payouts program?

We are introducing a direct-to-artist payment component: the Direct Artists Payout program. This experimental program aims to give artists access to another payment stream by allocating up to 10% of a HiFi Plus subscriber's fees directly to that account's top streamed artist. This will allow artists to benefit directly from the support of their fans on TIDAL.

https://support.tidal.com/hc/en-us/articles/4409637608849-Direct-Artist-Payouts-and-Royalties (last visited June 13, 2022).  Aspiro provides functionality that enables users to determine which specific artists benefit from their personal streaming, which on information and belief evidences that Aspiro maintains information relating to specific songs, duration of play, and owner of the song.

The allocation will be directed to each Hifi Plus subscriber's most-listened-to artist for the month. Following the end of every calendar month, we will look back at a subscriber's most-listened-to artist, and allocate the direct payment to that artist. Qualified artists who enroll in the Direct Artist Payout program will be entitled to collect the payouts allocated to them on a monthly basis. In the future, we expect to introduce additional ways in which artists can receive allocations through the Direct Artists Payout program beyond just volume of listens in a calendar month.

https://support.tidal.com/hc/en-us/articles/4409637608849-Direct-Artist-Payouts-and-Royalties

(last visited June 13, 2022).  On information and belief, Aspiro tracks duration of play because songs need to stream for at least 30 seconds to count as a stream.  *See, e.g.*, https://www.reddit.com/r/TIdaL/comments/skru63/what_counts_as_a_stream_on_tidal/ (last visited June 13, 2022).

39.     As in claim 22 of the '053 Patent, based on the play-out information, the Accused Product allocates, by the computer system, payments for owners of the music files in the playlist that have been streamed to the second user, wherein the allocating includes determining a total duration of play-out of the particular music file based on a plurality of durations of play-out of the particular music file included in the table.  For example, Aspiro pays artists based on plays of content.

### Direct Artist Payouts and Royalties

**What is the Direct Artist Payouts program?**

We are introducing a direct-to-artist payment component: the Direct Artists Payout program. This experimental program aims to give artists access to another payment stream by allocating up to 10% of a HiFi Plus subscriber's fees directly to that account's top streamed artist. This will allow artists to benefit directly from the support of their fans on TIDAL.

https://support.tidal.com/hc/en-us/articles/4409637608849-Direct-Artist-Payouts-and-Royalties

(last visited June 13, 2022).  Aspiro provides functionality that enables users to determine which specific artists benefit from their personal streaming, which on information and belief demonstrates that Aspiro maintains information relating to specific songs, duration of play, and owner of the song.

The allocation will be directed to each Hifi Plus subscriber's most-listened-to artist for the month. Following the end of every calendar month, we will look back at a subscriber's most-listened-to artist, and allocate the direct payment to that artist. Qualified artists who enroll in the Direct Artist Payout program will be entitled to collect the payouts allocated to them on a monthly basis. In the future, we expect to introduce additional ways in which artists can receive allocations through the Direct Artists Payout program beyond just volume of listens in a calendar month.

https://support.tidal.com/hc/en-us/articles/4409637608849-Direct-Artist-Payouts-and-Royalties

(last visited June 13, 2022).  On information and belief, Aspiro tracks duration of play because songs need to stream for at least 30 seconds to count as a stream.  *See, e.g.*, https://www.reddit.com/r/TIdaL/comments/skru63/what_counts_as_a_stream_on_tidal/ (last visited June 13, 2022).

40.     Defendant makes, uses, sells, and/or offers to sell the Accused Products which practices at least claim 22 of the '053 Patent.

41.     In violation of 35 U.S.C. § 271, Defendant has been directly infringing the '053 Patent, including through its own use, testing, and sale of the Accused Products.

42.     Defendant has had knowledge of infringement of the '053 Patent at least as of the service of the present Complaint.

43.     Defendant has directly infringed at least one claim of the '053 Patent by making, using, offering for sale, and selling the Accused Product without authority in the United States. As a direct and proximate result of Defendant's direct infringement of the '053 Patent, DMS has been damaged.

44.     By engaging in the conduct described herein, Defendant has injured DMS and is thus liable for infringement of the '053 Patent, pursuant to 35 U.S.C. § 271.

45.     Defendant has committed these acts of infringement without license or authorization.

46.     As a result of Defendant's infringement of the '053 Patent, Plaintiff has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendant's past infringement, together with interests and costs.

47.     Plaintiff reserves the right to modify its infringement theories as discovery progresses in this case; it shall not be estopped for infringement contention or claim construction purposes by the claim chart that it provides with this Complaint.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 8,122,004

48.     Plaintiff incorporates by reference and re-alleges the foregoing paragraphs of this Complaint as if fully set forth herein.

49.     Defendant has directly infringed at least claim 1 of the '004 Patent in violation of 35 U.S.C. § 271 *et seq.*, by making, using, offering for sale, or selling in the United States, and/or importing into the United States without authority or license the Accused Product.

50.     The Accused Product meets all the limitations of at least claim 1 of the '004 Patent. For example, claim 1 of the '004 Patent recites:

A computer-implemented method implemented by at least one device of a content delivery system, the method comprising:

processing requests for media content from network devices to determine whether the network devices are supported by the content delivery system; and for at least one network device that is supported:

configuring a content package for media content that is requested by the network device to include code specific to a browser of the network device identified based upon one or more attributes of the network device;

causing communication of the content package to the network device; and

wherein the one or more attributes include one or more of basic operating characteristics of the at least one network device, a language attribute, a bandwidth attribute, a firewall attribute, or a permissions attribute.

51. As in claim 1 of the '004 Patent, the Accused Product provides a content delivery system.

**How Much Music is Available in TIDAL?**

The TIDAL catalog is always growing. Currently, we have licensed 90 million tracks for you to enjoy along with 450,000 high-quality videos.

On an ongoing basis, we add catalogs from independent labels in the United States. New tracks, albums, and videos are added daily as they are released by the labels.

https://support.tidal.com/hc/en-us/articles/201167102-How-Much-Music-is-Available-in-TIDAL- (last visited June 13, 2022).

52. As in claim 1 of the '004 Patent, the Accused Product processes requests for media content from network devices (*e.g.*, computers) to determine whether the network devices are supported by the content delivery system (*e.g.*, Tidal). For example, the Accused Product provides functionality to allow the streaming of media content to the browser of a computer.

TIDAL can also be enjoyed without downloading an app through our web player at listen.TIDAL.com.

https://support.tidal.com/hc/en-us/articles/115005868269-Download-TIDAL (last visited June 13, 2022). The Accused Product supports streaming content to certain browsers.



[https://support.tidal.com/hc/en-us/articles/115005872445](https://support.tidal.com/hc/en-us/articles/115005872445) (last visited June 13, 2022).

53.     As in claim 1 of the '004 Patent, the Accused Product configures a content package for media content (*e.g.*, an audio file) that is requested by the network device (*e.g.*, a computer) to include code specific to a browser of the network device identified based upon one or more attributes of the network device.  For example, the Accused Product provides the media content to the browser based on certain specific attributes, such as language, a bandwidth attribute, and permissions attribute.

<html lang="en">

[https://listen.tidal.com/](https://listen.tidal.com/) (view source) (last visited June 13, 2022).



[https://listen.tidal.com/settings](https://listen.tidal.com/settings) (last visited June 13, 2022).

16

A TIDAL HiFi Plus membership supports additional, innovative sound formats:

- **Master** - Original master recordings - authenticated by the record label or artist themselves. Unrivaled quality, clarity and depth delivering all file sizes (up to 24 bit / 352kHz), using no more bandwidth than a CD quality (16 bit / 44.1kHZ) file (up to 9216 Kbps or 24 bit / 192 kHz).

- **Immersive Audio -** Allows sounds to be precisely and spatially placed. We are the only service to support both 360 Reality Audio and Dolby Atmos on mobile devices.

- **HiFi** - Lossless quality audio (1411kbps or 16bit / 44.1kHz).

- **High** - Best compromise between data usage and sound quality (320kbps AAC).

- **Normal** - Reduced data usage for slower connections.

https://support.tidal.com/hc/en-us/articles/360002599997-What-Audio-Quality-Do-TIDAL-HiFi-Plans-Offer- (last visited June 13, 2022).

## Subscription Types

All subscription types include access to 90M songs, ad free with unlimited skips, offline play, personalized mixes and radio, 450k high definition music videos, exclusive content, livestreams, and expertly curated playlists.

- **HiFi** - $9.99 USD a month with standard sound quality (1411 Kbps)

- **HiFi Plus** - $19.99 USD a month with lossless High Fidelity sound quality (1411 Kbps), Master Quality audio (up to 9216 Kbps), and immersive audio - 360 Reality Audio, Dolby Atmos Music

- **Family HiFi** - $14.99 USD a month including up to 5 additional family members totaling 6 on the account. Standard sound quality (1411 Kbps)

- **Family HiFi Plus** - $29.99 USD a month including up to 5 additional family members totaling 6 on the account. Lossless High Fidelity sound quality (1411 Kbps), Master Quality audio (up to 9216 Kbps), and immersive audio - 360 Reality Audio, Dolby Atmos Music

https://support.tidal.com/hc/en-us/articles/115003662825-Subscription-Types  (last  visited  June 13, 2022).

**Desktop:**

1. Go to account.tidal.com and log in.
2. Click on Offline Devices.
3. Select the device you wish to deactivate and click on Remove Device.

https://support.tidal.com/hc/en-us/articles/115003672409-Deauthorize-a-Device-on-Mobile  (last visited June 13, 2022).

54.     As in claim 1 of the '004 Patent, the Accused Product causes communication of the content package (*e.g.*, an audio file) to the network device (*e.g.*, a computer).  For example, Tidal streams an audio file to the browser of a computer.

TIDAL can also be enjoyed without downloading an app through our web player at listen.TIDAL.com.

https://support.tidal.com/hc/en-us/articles/115005868269-Download-TIDAL (last visited June 13, 2022).

55.     As in claim 1 of the '004 Patent, in the Accused Product, the one or more attributes include one or more of basic operating characteristics of the at least one network device, a language attribute, a bandwidth attribute, a firewall attribute, or a permissions attribute.  For example, the Accused Product provides the media content to the browser based on certain specific attributes, such as language, a bandwidth attribute, and permissions attribute.

<html lang="en">

https://listen.tidal.com/ (view source) (last visited June 13, 2022).



https://listen.tidal.com/settings (last visited June 13, 2022).

A TIDAL HiFi Plus membership supports additional, innovative sound formats:

- **Master** - Original master recordings - authenticated by the record label or artist themselves. Unrivaled quality, clarity and depth delivering all file sizes (up to 24 bit / 352kHz), using no more bandwidth than a CD quality (16 bit / 44.1kHZ) file (up to 9216 Kbps or 24 bit / 192 kHz).

- **Immersive Audio -** Allows sounds to be precisely and spatially placed. We are the only service to support both 360 Reality Audio and Dolby Atmos on mobile devices.

- **HiFi** - Lossless quality audio (1411kbps or 16bit / 44.1kHz).

- **High** - Best compromise between data usage and sound quality (320kbps AAC).

- **Normal** - Reduced data usage for slower connections.

https://support.tidal.com/hc/en-us/articles/360002599997-What-Audio-Quality-Do-TIDAL-HiFi-Plans-Offer- (last visited June 13, 2022).

## Subscription Types

All subscription types include access to 90M songs, ad free with unlimited skips, offline play, personalized mixes and radio, 450k high definition music videos, exclusive content, livestreams, and expertly curated playlists.

- **HiFi** - $9.99 USD a month with standard sound quality (1411 Kbps)

- **HiFi Plus** - $19.99 USD a month with lossless High Fidelity sound quality (1411 Kbps), Master Quality audio (up to 9216 Kbps), and immersive audio - 360 Reality Audio, Dolby Atmos Music

- **Family HiFi** - $14.99 USD a month including up to 5 additional family members totaling 6 on the account. Standard sound quality (1411 Kbps)

- **Family HiFi Plus** - $29.99 USD a month including up to 5 additional family members totaling 6 on the account. Lossless High Fidelity sound quality (1411 Kbps), Master Quality audio (up to 9216 Kbps), and immersive audio - 360 Reality Audio, Dolby Atmos Music

https://support.tidal.com/hc/en-us/articles/115003662825-Subscription-Types (last visited June 13, 2022).

**Desktop:**

1. Go to account.tidal.com and log in.
2. Click on Offline Devices.
3. Select the device you wish to deactivate and click on Remove Device.

https://support.tidal.com/hc/en-us/articles/115003672409-Deauthorize-a-Device-on-Mobile (last visited June 13, 2022).

56.    Defendant makes, uses, sells, and/or offers to sell the Accused Products which practices at least claim 1 of the '004 Patent.

57.    In violation of 35 U.S.C. § 271, Defendant has been directly infringing the '004 Patent, including through its own use, testing, and sell of the Accused Products.

58.    Defendant has had knowledge of infringement of the '004 Patent at least as of the service of the present Complaint.

59.    Defendant has directly infringed at least one claim of the '004 Patent by making, using, offering for sale, and selling the Accused Product without authority in the United States. As a direct and proximate result of Defendant's direct infringement of the '004 Patent, DMS has been damaged.

60.    By engaging in the conduct described herein, Defendant has injured DMS and is thus liable for infringement of the '004 Patent, pursuant to 35 U.S.C. § 271.

61.    Defendant has committed these acts of infringement without license or authorization.

62.    As a result of Defendant's infringement of the '004 Patent, Plaintiff has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendant's past infringement, together with interests and costs.

63.     Plaintiff reserves the right to modify its infringement theories as discovery progresses in this case; it shall not be estopped for infringement contention or claim construction purposes by the claim chart that it provides with this Complaint.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 8,046,672

64.     Plaintiff incorporates by reference and re-alleges the foregoing paragraphs of this Complaint as if fully set forth herein.

65.     Defendant has directly infringed at least claim 1 of the '672 Patent in violation of 35 U.S.C. § 271 *et seq.*, by making, using, offering for sale, or selling in the United States, and/or importing into the United States without authority or license the Accused Product.

66.     Defendant has directly infringed at least claim 1 of the '672 Patent by performing all the limitation of that claim.  For example, claim 1 of the '672 Patent recites:

A method comprising:

receiving an indication over a network, in response to a request for access to a rich media presentation by an internet browser on a network device, that the internet browser on the network device has requested access to the rich media presentation;

in response to the receiving an indication, detecting one or more attributes of one or both of rich media capabilities associated with the internet browser or rich media capabilities associated with the network device; and

selecting a rich media presentation to be sent to the internet browser from among a plurality of rich media presentations based on the one or more attributes that are detected, wherein a selected rich media presentation includes a media package selected based on the one or more attributes that are detected and a virtual player configured to play the media package on the network device.

67.     As in claim 1 of the '672 Patent, the Accused Product receives an indication over a network, in response to a request for access to a rich media presentation (*e.g.*, a video) by an internet browser on a network device (*e.g.*, a computer), that the internet browser on the network device has requested access to the rich media presentation.

### Play Queue

Play Queue is where you can view and manage what TIDAL will play next.

You can add content such as tracks, albums, and videos to your Play Queue.

If you have not queued up any content, TIDAL will generate a Next Up queue based on the last selection made.

To start a Play Queue, select a track, album, or video by clicking on ⋯ next to the listing. You can select Play Next to start a Play Queue. If you have previously selected content to Play Next, you can select Add to Queue or Play Next to bump this selection to the top of the Play Queue.

The Play Queue menu allows you to manage your Play Queue as well as Now Playing, Next Up, and recently played content.

https://support.tidal.com/hc/en-us/articles/360004182777-Play-Queue (last visited June 13, 2022).

### My Video Mix

TIDAL currently offers over 450,000 music videos, short docs, movies, live concerts, events, and original shows and podcasts.

My Video Mix is a video discovery feature that curates personalized video mixes based on your favorite content and listening behavior. Your mix will change gradually based on your activity, and will include your latest favorites and add videos with similar vibes. My Video Mixes will be grouped by artists and music clusters. Depending on the variety of music you enjoy, you will be offered 1-8 mixes. The more you listen and watch, the more often the mixes will be updated.

You can locate My Video Mix at the top of the Videos section or in My Collection by clicking on My Mix. If you want to save a My Video Mix, you can save the mix by pressing + Create Playlist. This will save the My Video Mix as a playlist and add it to My Collection.

If you are new to TIDAL, you will start getting personalized mixes after you have streamed enough for our algorithms to determine your music personality!

https://support.tidal.com/hc/en-us/articles/360003671658-My-Video-Mix (last visited June 13, 2022).

68.     As in claim 1 of the '672 Patent, in response to the receiving an indication, the Accused Product detects one or more attributes of one or both of rich media capabilities associated with the internet browser or rich media capabilities associated with the network device.   For example, the Tidal browser-based application provides for "auto" detection of bandwidth capability.



69.     As in claim 1 of the '672 Patent, the Accused Product selects a rich media presentation to be sent to the internet browser from among a plurality of rich media presentations based on the one or more attributes that are detected, wherein a selected rich media presentation includes a media package selected based on the one or more attributes that are detected and a virtual player configured to play the media package on the network device.   For example, the Accused Product sends video that is selected based on detected bandwidth.



70.     Defendant makes, uses, sells, and/or offers to sell the Accused Products which practices at least claim 1 of the '672 Patent.

71.     In violation of 35 U.S.C. § 271, Defendant has been directly infringing the '672 Patent, including through its own use, testing, and sell of the Accused Products.

72.     Defendant has had knowledge of infringement of the '672 Patent at least as of the service of the present Complaint.

73.     Defendant has directly infringed and continues to infringe at least one claim of the '672 Patent by making, using, offering for sale, and selling the Accused Product without authority in the United States.  As a direct and proximate result of Defendant's direct infringement of the '672 Patent, DMS has been damaged.

74.     By engaging in the conduct described herein, Defendant has injured DMS and is thus liable for infringement of the '672 Patent, pursuant to 35 U.S.C. § 271.

75.     Defendant has committed these acts of infringement without license or authorization.

76.     As a result of Defendant's infringement of the '672 Patent, Plaintiff has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendant's past infringement, together with interests and costs.

77.     Plaintiff reserves the right to modify its infringement theories as discovery progresses in this case; it shall not be estopped for infringement contention or claim construction purposes by the claim chart that it provides with this Complaint.

## DEMAND FOR JURY TRIAL

78.     DMS demands a trial by jury of any and all causes of action.

## PRAYER FOR RELIEF

**WHEREFORE**, DMS respectfully requests:

a.     That Judgment be entered that Defendant has infringed one or more claims of the '053 Patent;

b.     That Judgment be entered that Defendant has infringed one or more claims of the '004 Patent;

c.     An award of damages pursuant to 35 U.S.C. §284, sufficient to compensate Plaintiff for the Defendant's past infringement and any continuing or future infringement;

d.     An assessment of pre-judgment and post-judgment interest and costs against Defendant, together with an award of such interest and costs, in accordance with 35 U.S.C. §284;

e.     That Defendant be directed to pay enhanced damages, including Plaintiff's attorneys' fees incurred in connection with this lawsuit pursuant to 35 U.S.C. §285; and

f.     That Plaintiff be granted such other and further relief as this Court may deem just and proper.

DATED:   July 8, 2022

Respectfully submitted,

/s/ Mark S. Raskin w/permission Stafford Davis
Mark S. Raskin
Michael S. DeVincenzo
Daniel Miller
KING & WOOD MALLESONS LLP
500 5th Avenue, 50th Floor
New York, New York 10110
(212) 319-4755
mark.raskin@us.kwm.com
michael.devincenzo@us.kwm.com
daniel.miller@us.kwm.com

Stafford Davis
State Bar No. 24054605
Email: sdavis@stafforddavisfirm.com
Catherine Bartles
State Bar No. 24104849
Email: cbartles@stafforddavisfirm.com
THE STAFFORD DAVIS FIRM, PC
815 S Broadway Ave
Tyler, Texas 75701
Phone: (903) 593-7000
Fax: (903) 705-7369

Attorneys  for  Plaintiff  Distributed  Media
Solutions, LLC